1   EUGENE G. IREDALE, ESQ. (SBN: 75292)
    JULIA YOO, ESQ. (SBN: 231163)
2   105 West "F" Street, 4th Floor
    San Diego, California  92101-6036
3   TEL: (619) 233-1525
    FAX: (619) 233-3221
4   Attorneys for Plaintiff
    Aaron Calcagno
5

6

7

8
                    UNITED STATES DISTRICT COURT
9             SOUTHERN DISTRICT OF CALIFORNIA

10  AARON CALCAGNO,  an          )   Case No.  '14CV2845 H     JMA
    individual                   )
11                               )   COMPLAINT FOR:
                Plaintiff,       )
12                               )   (1)   ARREST WITHOUT
    v.                           )         PROBABLE CAUSE (42 U.S.C. §
13                               )         1983)
    COUNTY OF SAN DIEGO, a       )
14  municipal corporation, KURT  )   (2)   ILLEGAL SEARCH AND
    CARTIE, and DOES 1-50 inclusive, )     SEIZURE IN VIOLATION OF
15                               )         *FRANKS V. DELAWARE* (42
                Defendants.      )         U.S.C. § 1983)
16                               )
                                 )   (3)   FALSE IMPRISONMENT
17                               )
                                 )   (4)   INTENTIONAL INFLICTION OF
18                               )         EMOTIONAL DISTRESS
                                 )
19                               )   (5)   NEGLIGENCE
                                 )
20                               )
                                 )
21                               )
                                 )
22                               )   JURY TRIAL IS HEREBY
                                 )   DEMANDED PURSUANT TO FRCP
23                               )   RULE 38
                                 )
24                               )
                                 )
25                               )
                                 )
26                               )
                                 )
27                               )
28

                                 1

Plaintiff alleges and complains as follows:

# I.
## GENERAL ALLEGATIONS

1.      Jurisdiction is founded upon the existence of a federal question, pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (4).

2.      This is an action to redress the deprivation under color of statute, ordinance, regulation, custom or usage of  rights, privileges, and immunities secured to the Plaintiff by the Fourth and Fourteenth Amendments to the Constitution of the United States (42 U.S.C. § 1983) and arising under the law and statutes of the State of California.

3.      This Court has supplemental jurisdiction over the pendent state law claims under 28 U.S.C. § 1367(a).

4.      Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Southern District of California because the acts or omissions which form the basis of the Plaintiff's claims occurred in San Diego, California.

5.      Plaintiff has complied with Cal. Gov. Code  §§ 800 *et seq*.

6.      At all times relevant to this complaint, Plaintiff was an individual residing in San Diego, California.

7.      At all times relevant to this complaint, Defendants KURT CARTIE and DOES 1-50 were acting within the scope of their employment for the San Diego Sheriff's Department.

8.      At all times relevant to this complaint, Defendants DOES 1-50 were San Diego Sheriff Deputies and agents of the COUNTY OF SAN DIEGO.  At all times relevant hereto, these defendants were acting in their professional capacities.

9.      Defendants DOES 1-50 participated in the arrest of Aaron Calcagno.

10.      Plaintiff is truly ignorant of the true names and capacities of DOES and/or is truly ignorant of the facts giving rise to their liability and will amend this complaint once their identities have been ascertained as well as the facts giving

1    rise to their liability.

2        11.    These defendants were agents, servants, and employees of the other

3    named defendants and were acting at all times within the full course and scope of

4    their agency and employment, with the full knowledge and consent, either

5    expressed or implied, of their principal and/or employer and each of the other

6    named defendants had approved or ratified the actions of these defendants, thereby

7    making the currently named defendants herein liable for the acts and/or omissions

8    of their agents, servants and/or employees.

## II.
## FACTS

9

10       12.    Plaintiff realleges all prior paragraphs of this complaint and

11   incorporates the same herein.

12       13.    Defendants were investigating a series of thefts and fraud committed

13   by a man whose image was captured on video surveillance tapes at various

14   businesses.

15       14.    The suspect was described by the victims as "a white male, about 30

16   years old, standing 6'0" and weighing about 180 pounds.  He has short dark hair

17   with sideburns.  He may have been wearing prescription glasses with transition

18   lenses."

19       15.    The description given by the victims (a white male, about 30 years

20   old, standing 6'0" and weighing about 180 pounds) is consistent with hundreds of

21   thousands of persons in the United States.

22       16.    On June 18, 2014, Crime Stoppers ran a story regarding the crimes

23   showing surveillance photos of the suspect and photos of the cars driven by the

24   suspect.

25       17.    An anonymous caller contacted the police and told them that the

26   suspect looked like Plaintiff, Aaron Calcagno.

27       18.    Defendants did not know the identity of the anonymous caller; the

28

1   caller's relationship to Plaintiffs; whether the caller was reliable; or whether the
2   caller was acting out of malice.

3        19.    Defendant CARTIE, a detective, obtained a photograph of
4   Mr. Calcagno from the DMV and compared it to the photograph of the suspect that
5   was captured on videotape surveillance.

6        20.    Mr. Calcagno's appearance does not resemble that of the person
7   shown on the videotapes.

8        21.    According to the information on Mr. Calcagno's driver's license,
9   Mr. Calcagno was 38 years old,  5'8" and 165 pounds, approximately eight years
10  older, four inches shorter, and 15 pounds lighter than the suspect.  In June of 2014,
11  Mr. Calcagno weighed 158 pounds.

12       22.    However, the information given to the Court pursuant to the search
13  warrant was that Mr. Calcagno was issued a California driver license, "being a
14  white male adult, about 5'11" tall, about 175 lb., with brown hair and brown eyes."

15       23.    Upon information and belief, Defendant CARTIE intentionally
16  omitted accurate information of Mr. Calcagno's height and weight in a sworn
17  declaration to obtain a search warrant, because he knew that a judge would not
18  sign a warrant given the difference in the appearance between Mr. Calcagno and
19  the suspect.  Instead, Defendants added three inches and ten pounds to the known
20  description of Mr. Calcagno which they obtained from the DMV.

21       24.    In order to obtain a search warrant, Defendant CARTIE made false
22  statements and omissions of material facts in his declaration.

23       25.    Defendants omitted the description of the cars seen leaving the crime
24  scene because they knew that they were dissimilar to the cars Mr. Calcagno
25  owned.

26       26.    On June 20, 2014, two days after the Crimestoppers advertisement
27  had run, Defendants obtained a search warrant for Mr. Calcagno's residence.

28       27.    That evening at approximately 5:45 p.m., Defendants executed the

warrant at Mr. Calcagno's home.

28.    Defendants handcuffed Mr. Calcagno in front of his minor children.

29.    Mr. Calcagno asked to use the telephone to call Sharp Grossmont Hospital, where he worked as a registered nurse, to let them know he would be late for his 7:00 p.m. shift.

30.    One of the defendants stated that Mr. Calcagno was not going to work that night.

31.    Following the search, Defendant CARTIE asked to speak to Kathleen, Mr. Calcagno's wife, outside the house.

32.    Defendant CARTIE knew that Kathleen Calcagno was an analyst with the Drug Enforcement Administration.

33.    Defendant CARTIE showed Kathleen Calcagno surveillance photographs of the suspect.  Mrs. Calcagno immediately pointed out the obvious differences in appearance between the photographs and her husband.  The suspect had a long and pointy nose that was substantially narrower than Mr. Calcagno's.

34.    Defendant CARTIE told Mrs. Calcagno that they found no evidence from the burglaries or clothing worn by the suspect in the home.

35.    Defendant CARTIE then told Mrs. Calcagno that he had probable cause to arrest Mr. Calcagno based on the fuzzy photographs from the videotape surveillance.

36.    Defendants knew that Mr. Calcagno did not own the cars suspected to have been driven by the suspect.

37.    Defendants knew that Mr. Calcagno owned a dark grey 2014 Honda Odyssey and a silver 2008 Honda Fit.  These cars looked nothing like the two cars identified as the possible suspect vehicles seen leaving the scene of the crime, which were a blue pickup truck and a blue sedan.

////

////

38.     The warrant called for the following items to be seized:

    1. Aaron Calcagno's personal cell phone;

    2. Laptops and/or personal computers, mobile phones, tablets, thumb drives, and electronic equipment and storage devices owned by or primarily used by Aaron Calcagno; to view and forensically examine any devices seized pursuant to the warrant;

    3. Papers, documents, and effects tending to show possession, dominion and control over said premises including keys, photographs, digital images, and/or video images, anything bearing a person's name, Social Security number, driver's license number or other form of identification; to view any recording devices seized pursuant to the warrant;

    4. Prescription glasses and sunglasses;

    5. A Ulysses Nardin Santana, Model #67088213;

    6. Rolex Daytona, Serial #5HC96308;

    7. Gift cards;

    8. Panama style hat;

    9. Short sleeve button shirt with collar and pattern with front pockets;

    10. Tan colored baseball cap;

    11. Dark dress jacket/blazer;

    12. Yellow tie;

    13. Dark jeans;

    14. Black dress shoes;

    15. White dress shirt;

    16. Light gray or blue polo style shirt;

    17. Dark shorts with lighter flair of color on sides;

    18. Gray tennis shoes.

39.     Defendants searched Mr. Calcagno's  home for approximately two hours.

40.    The suspect was known to wear two hats during the commission of the crimes: a Panama style hat and a beige baseball cap.  Defendants found nothing similar to either in the home.

41.    The suspect was seen in a distinctive bright yellow tie.  Defendants found no yellow tie.

42.    The suspect was seen wearing a distinctively patterned blue and white short sleeve shirt with two front flap pockets.  Defendants found no such shirt.

43.    The suspect was known to be in possession of two watches, a Ulysses Nardin Santana and a Rolex Daytona, neither of which was located in the house.

44.    The suspect was known to be in possession of gift cards that he purchased with stolen credit cards, none of which were located in the house.

45.    Defendants searched for Panama style hat; patterned blue and white short sleeve button shirt with a collar and front pockets; tan colored baseball cap; yellow tie; dark jeans; black dress shoes; light gray or blue polo style shirt; dark shorts with lighter flair of color on sides; and gray tennis shoes.  Defendants found none of these items during their search.

46.    Defendants took Mr. Calcagno's cell phone and two laptops.

47.    The only articles of clothing seized from the home were a black jacket, a white button-up shirt, and a short sleeve shirt; all are nondescript articles of clothing.

48.    Defendants found no evidence that would link Mr. Calcagno  to any of the crimes.

49.    Defendants knew that Mr. Calcagno did not own either of the cars caught on surveillance tape.

50.    Defendants were in possession of the video stills of the suspect who was clearly not Mr. Calcagno.  Any reasonable police officer would have realized that the stills did not depict Plaintiff and that it would be objectively unreasonable

to arrest Mr. Calcagno.

51.   Mr. Calcagno has a mole on his face and a tattoo on his arm, which were not visible in any of the surveillance photographs.

52.   The only similarity between the suspect and Mr. Calcagno was that they were both white males with short dark hair and sideburns.

53.   Defendants were aware of the security cameras located at the Calcagno home, but they did not view the tapes or request to view the tapes to check the whereabouts of Mr. Calcagno during the commission of the crimes being investigated.

54.   Defendants arrested Mr. Calcagno and booked him into jail.  The bail was set at $50,000.00.

55.   Kathleen Calcagno posted the bond and Mr. Calcagno was released after 4:00 a.m.

56.   The next day, Defendant CARTIE returned the laptop computers to the Calcagnos, stating that he did not find anything incriminating on them and that he would not send them to Forensics.

57.   No criminal charges were ever filed against Mr. Calcagno.

58.   As a result of Defendants' actions, Plaintiff has suffered harm and injuries in the amount to be proven at trial.

## III
## FIRST CAUSE OF ACTION
**[Civil Rights Action (42 U.S.C. § 1983) Against Defendant CARTIE, and DOES 1 to 50**
**Arrest without Probable Cause]**

59.   Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein.

60.   42 U.S.C. § 1983 provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory subjects, or causes to be subjected, any person of the

1
2
3

United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit at equity or other proper proceeding for redress.

4
5

61.    Plaintiff had a firmly established right under the Fourth Amendment to be free from arrest without probable cause.

6
7

62.    Defendants arrested Aaron Calcagno without a warrant despite the fact that he was not the person who committed the crimes.

8
9

63.    Defendants arrested Mr. Calcagno without probable cause, subjecting him to an unlawful seizure of his person.

10
11
12

64.    Defendants ignored all evidence indicating Mr. Calcagno's innocence.  Defendants arrested Mr. Calcagno despite the fact that they found no evidence of a crime in his home.

13
14

65.    Defendant CARTIE was at this time performing his duties as an officer for the Defendant COUNTY OF SAN DIEGO.

15
16
17

66.    During the relevant period, Cartie was acting under color and pretense of law, to wit: under color of the statutes, ordinances, regulations, customs and usages of the State of California and the County of San Diego.

18
19
20
21
22

67.    The Defendants, separately and in concert, engaged in the illegal conduct to the injury of the Plaintiff, and deprived Plaintiff of the rights, privileges and immunities secured to Plaintiff by the Fourth Amendment to the Constitution of the United States and the laws of the United States.  Defendants acted with callous disregard for the constitutionally protected rights of Plaintiff.

23
24
25

68.    Plaintiff was subjected to humiliation, fear, and pain and suffering by the illegal acts of Defendants and suffered injuries as a result of the Defendants' actions.

26
27

69.    Plaintiff is entitled to compensatory damages, punitive damages, attorney's fees under 42 U.S.C. § 1988, and all applicable law, and such additional

28

relief as the Court deems just.

**IV.**
**SECOND CAUSE OF ACTION**
**[Violation of 42 U.S.C. § 1983 Illegal Search and Seizure in Violation of**
***Franks v. Delaware* under the Fourth Amendment**
**against Defendant CARTIE]**

70.    Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference as if those paragraphs were set forth in full herein.

71.    Defendant CARTIE made false statements knowingly and intentionally, or with reckless disregard for the truth, which were included in the search warrant affidavit.

72.    Upon information and belief, Defendant CARTIE stated in the affidavit that Aaron Calcagno was 5'11" tall and 175 pounds when he knew that Mr. Calcagno was 5'8" tall and 165 pounds.

73.    Upon information and belief, Defendant CARTIE omitted the fact that the suspect was approximately 30 years old; 6' tall and 180 pounds; approximately eight years younger, four inches taller and 15 pounds heavier than Mr. Calcagno.

74.    Upon information and belief, Defendant CARTIE omitted the fact that the suspect vehicles were a blue pickup truck and a blue sedan.  This omission was made knowingly and intentionally.

75.    The search of Aaron Calcagno's  home was unreasonable and illegal under the Fourth Amendment because the warrant was based upon statements made with knowing falsity or reckless disregard.  Absent these false statements, there was no probable cause for the issuance of a search warrant.

76.    The warrant lacked probable cause it was based on the presentation of materially false information and the withholding of materially relevant information.

77.     The materially false information and omissions of information in possession of Defendant CARTIE negated probable cause.

78.     Defendant CARTIE was deliberately indifferent to Plaintiffs' rights.

79.     The unlawful and illegal conduct of Defendants, their agents, servants and employees and each of them, deprived Plaintiff of the rights, privileges, and immunities secured to him by the Constitutions of the United States.

80.     The search of Plaintiff's home and the seizure of his property pursuant of a tainted warrant violated the Fourth Amendment.

81.      As a direct, proximate and foreseeable result, Plaintiff has suffered damages in an amount to be proven at the time of trial.

## V.
## THIRD CAUSE OF ACTION
### [FALSE IMPRISONMENT Against Defendants CARTIE and DOES 1 to 50]

82.     Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference as if those paragraphs were set forth in full herein.

83.     Defendants unlawfully detained the Plaintiff for an unreasonable period of time after they knew or should have known that Aaron Calcagno was not the same person depicted in the surveillance photograph.

84.     False imprisonment is the nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short.

85.     Mr. Calcagno was imprisoned against his will after being wrongfully arrested.

86.     Defendants knew or should have known that Mr. Calcagno was not the suspect caught on video surveillance.

87.     Defendant CARTIE falsely imprisoned Aaron Calcagno by fabricating evidence in his statement of probable cause in violation of *Franks v.*

*Delaware*, 438 U.S. 154 (1978).

88.     The conduct of Defendants also amounts to oppression, fraud or malice within the meaning of California Civil Code § 3294 *et seq*. and punitive damages should be assessed against each defendant for the purpose of punishment and for the sake of example.

89.     As a result of Defendants' actions, Plaintiff suffered damages in the amount to be proven at trial.

## XI.
## FOURTH CAUSE OF ACTION
### [Intentional Infliction of Emotional Distress Against Defendants CARTIE and COUNTY OF SAN DIEGO]

90.     Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein.

91.     By engaging in the acts alleged herein, the Defendants engaged in outrageous conduct with an intent to casue or a reckless disregard of the probability of causing Plaintiff to suffer emotional distress.

92.     As a direct, proximate and foreseeable result, Plaintiff has suffered severe emotional distress and the outrageous conduct was the cause of the emotional distress suffered by Plaintiff.

93.     The conduct of Defendants also amounts to oppression, fraud or malice within the meaning of California Civil Code § 3294 *et seq*. and punitive damages should be assessed against each defendant for the purpose of punishment and for the sake of example.

94.     As a result of Defendants' actions, Plaintiff suffered damages in the amount to be proven at trial.

////
////
////
////

**XII.**
**FIFTH CAUSE OF ACTION**
**[Negligence Against Defendants COUNTY OF SAN DIEGO, CARTIE and DOES 1 to 50]**

95.    Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein.

96.    Defendants, their agents, servants and employees owed a duty of reasonable care to prevent unnecessary harm to plaintiff Aaron Calcagno.

97.    Defendants were negligent in failing to conduct a proper investigation before obtaining a search warrant for Mr. Calcagno's home.

98.    Defendants were negligent in failing to provide critical information in the affidavit for the search warrant.

99.    Defendants were negligent in arresting Mr. Calcagno when there was no probable cause.

100.    Defendants breached their duty to exercise reasonable care.

101.    Defendants failed to act with reasonable care, resulting in the wrongful arrest and detention of Plaintiff.

102.    Defendant COUNTY OF SAN DIEGO is liable for the negligence of its employees under *respondeat superior*.

103.    Defendants' breach of the duty of reasonable care caused damages to Plaintiff, in an amount to be established at trial.

WHEREFORE, Plaintiff prays as follows:

1.    For general and special damages according to proof at the time of trial;

2.    For punitive damages;

3.    For costs of suit and interest incurred herein;

4.    For an award of attorney's fees;

5.    For punitive damages; and

6.     Any further injunctive or declaratory relief this court deems just and proper.

DATED: December 1, 2014                   Respectfully submitted,


/s/ *Julia Yoo*
Eugene G. Iredale
Julia Yoo
Attorneys for Plaintiff
Aaron Calcagno

14